UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREW B. DIXON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-01234-SRC |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**Memorandum and Order**

Andrew Dixon seeks judicial review, under 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision denying his application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85.  The Court affirms the Commissioner's decision.

**I.     Procedural history**

In 2010, Michelle Stowers filed an application, on behalf of Dixon, for child supplemental security income, Tr. 340, and the Commissioner found that Dixon was disabled, doc. 20 at ¶ 3.  When Dixon turned 18 years old, the Social Security Administration redetermined Dixon's eligibility for supplemental security income.  *Id.*  It determined on initial review and reconsideration that, as of June 6, 2019, Dixon was no longer disabled.  Tr. 122–25, 139–41.  Upon Dixon's request, an Administrative Law Judge held a hearing, which the ALJ had to reconduct later because of audio issues with the recording of the first hearing.  Tr. 29 & n.1,

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Leland Dudek for Martin O'Malley as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

150. Dixon testified during both hearings. *See, e.g.*, Tr. 50, 70–71. Following the hearings, the ALJ determined that Dixon's disability ended on June 6, 2019. Tr. 29. Dixon then sought review of the ALJ's decision by the Appeal Council. *See* Tr. 1–2. In doing so, Dixon submitted additional vocational evidence. Tr. 2. The Appeals Council denied review and concluded that the additional vocational evidence did "not show a reasonable probability that it would change the outcome of the decision." Tr. 1–2. The ALJ's decision, therefore, is the final decision of the Commissioner that this Court reviews. *See* 20 C.F.R. § 404.900(a)(5); Tr. 1.

## II.     Standard for determining disability under the Act

Under the Social Security Act, if a person qualifies for supplemental security income for the month preceding the month in which the individual turns 18 years old, the Commissioner must redetermine the individual's eligibility "by applying the criteria used in determining initial eligibility for individuals who are age 18 or older." 42 U.S.C. § 1382c(a)(3)(H)(iii)(I). An adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step evaluation when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful

2

activity, the claimant is not disabled. *Id.* The Commission, however, does not use this step for redetermining disability at age 18. 20 C.F.R. § 416.987(b).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment[] [that] significantly limits [the] [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (fourth alteration in original) (quoting 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (first citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); then citing *id.* at 158 (O'Connor, J., concurring); and then citing 20 C.F.R. § 404.1521(a)); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)); *see also* 20 C.F.R. § 416.945(a)(1). While RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of

3

his limitations," *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)), RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC," *Id*.  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).

Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination[] if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of producing evidence showing that the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932 (citing *Goff*, 421 F.3d at 785).

4

### III. The ALJ's decision

Applying the foregoing, the ALJ concluded that Dixon's "disability ended on June 6, 2019, and [he had] not become disabled again since that date." Tr. 29. The ALJ concluded that Dixon had a severe impairment: autism. Tr. 31. The ALJ then considered whether Dixon's impairment met "or medically equal[ed] the severity of one of the listed impairments in" 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. Tr. 31–32 (emphasis removed). The ALJ concluded that it did not. *Id.*

Next, the ALJ considered the entire record and determined that Dixon had the RFC "to perform a full range of work at all exertional levels" and had some non-exertional limitations. Tr. 32–39 (emphasis removed). In light of his non-exertional limitations, Dixon could "complet[e] very short, simple, routine, repetitive tasks in two-hour intervals" and, on occasion, "interact superficially with the general public," "have direct interaction with coworkers-not requiring working in tandem or in teams," and "have direct interaction with supervisors." Tr. 33 (emphasis removed). Further, the ALJ found that Dixon was "limited to working in an environment in which there would be little change in its structure and [was] capable of completing non-production rate, non[-]assembly[-]line[-]type work." *Id.*

Finally, the ALJ determined that Dixon had no past relevant work and that "there [were] jobs that exist[ed] in significant numbers in the national economy that" Dixon could have performed, including laundry worker, field-crop-harvest worker, and vegetable-harvest worker. Tr. 39–40 (emphasis removed). Because Dixon's disability ended on June 6, 2019, and he had not become disabled again since that date, the ALJ concluded that Dixon was not eligible for supplemental security income. Tr. 40–41.

5

**IV.     Standard of review**

When a claimant seeks judicial review of the Commissioner's decision, the Court determines whether substantial evidence on the record as a whole supports his decision. 42 U.S.C. §§ 1383(c)(3), 1405(g). If it does, the Court must affirm the decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citing *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015)). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* (quoting *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). The Court will not "reverse merely 'because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently.'" *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)).

**V.     Discussion**

Dixon challenges the Commissioner's decision on two grounds. First, Dixon claims that the ALJ improperly considered a medical opinion and that substantial evidence does not support the ALJ's conclusion that the medical opinion was minimally persuasive. *See* doc. 19 at 3–10.[2]

---

[2] The Court cites to page numbers as assigned by CM/ECF.

Second, Dixon argues that the Appeals Council failed to properly consider new and material evidence. *See id.* at 10–15. The Court addresses each argument in turn.

### A. The ALJ's review of a medical opinion

Dixon claims that the ALJ improperly considered Michael March's medical opinion and that substantial evidence does not support the ALJ's conclusion that March's opinion was minimally persuasive. See doc. 19 at 3–10. As explained below, the Court finds that, while reviewing March's medical opinion, the ALJ employed the correct standard and reached a conclusion that substantial evidence supports.

The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[] or prior administrative medical finding[]." 20 C.F.R. § 416.920c(a). Instead, an ALJ must evaluate the persuasiveness of prior administrative medical findings and medical opinions in light of several factors, the most important of which are supportability and consistency. 20 C.F.R. § 416.920c(a)–(c); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022).

The consistency factor states that "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." 20 C.F.R. § 416.920c(c)(2). Similarly, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinions or prior administrative medical finding[] will be." 20 C.F.R. § 416.920c(c)(1). An ALJ must explain how he considered the consistency and supportability factors in his decision but need not explain how he considered the other factors. 20 C.F.R. § 416.920c(b)(2). Nor does the ALJ need to explicitly use the words "consistent" or

7

"support," or some variation thereof, in the analysis: "word choice alone does not warrant reversal." *Atwood v. Kijakazi*, No. 4:20-CV-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (citing *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013)).

Here, the ALJ reviewed March's medical opinion, which opined on Dixon's limitations that resulted from Dixon's autism spectrum disorder. Tr. 36, 38, 39. March's medical opinion specifically discussed why Dixon had been referred to him (for a mental-status exam and assessment of intellectual functioning"); Dixon's presenting concerns (autism spectrum disorder and limitations it causes); Dixon's mental-health, social, and medical histories; Dixon's mental status; and results from the Wechsler Adult Intelligence test that March administered to Dixon. Tr. 545–48. Based on this information, March provided his opinion on Dixon's cognitive ability, capacity to function independently, need for assistance, understanding of money, demeanor, mother's involvement, acquisition and ability to implement tasks, insight and judgment, communication, and ability to manage interpersonal interactions. Tr. 548. The ALJ found March's opinion "minimally persuasive." Tr. 38. In explaining why he reached this conclusion, the ALJ cited the applicable regulations, Tr. 33, and discussed the consistency and supportability (or lack thereof) of March's opinion, Tr. 34–39.

Regarding consistency, the ALJ explained that although some portions of March's opinions were consistent with the record, the record clearly showed that much of March's opinion was "overstated" and inconsistent with evidence in the record. *See* Tr. 38. The ALJ first found March's opinion that Dixon was "capable of simple instructions, he should not engage in work requiring significant changes or work that is complex or that requires a rapid pace, and that he should have limited interaction with others" consistent with the record. *See id.* The ALJ then elaborated on how other portions of March's opinion were inconsistent with other record evidence. The ALJ explained that March premised several of his other statements "almost

8

entirely" on Dixon's mother's "self-serving reports"—self-serving reports that themselves were "inconsistent with the totality of the evidence and . . . more severe than any other source in the file." *Id.* But the record, according to the ALJ, "support[ed] that [Dixon] ha[d] some mental flexibility, he [took] no medication and receive[d] no treatment, and his daily activities [were] not limited as one would expect due to [the] alleged psychiatric problem." *Id.* This discussion in the ALJ's opinion clearly demonstrates that he considered whether March's opinion was consistent with other record evidence, and that he explained why he found March's opinion inconsistent with other record evidence.

Further, substantial evidence supports the ALJ's conclusion that part of March's opinion is inconsistent with other record evidence. Upon review of the record, the Court finds that, as the ALJ discussed, several of March's statements were inconsistent with evidence demonstrating that Dixon, despite his autism spectrum disorder, retained mental flexibility, had minimal treatment history, and only had some minor limitations on his daily activities.

For example, March opined that Dixon's developmental disability significantly limited Dixon's ability to function independently. Tr. 38, 548. And March claimed that Dixon "require[d] assistance to maintain basic safety, to manage basic hygiene and other tasks of daily living," and did "not have an understanding of the concept of money." *Id.* But record evidence, including Dixon's own statements, supported that Dixon could and did safely walk to the gas station to buy snacks, Tr. 55; stayed at home alone and took care of himself while his mother worked her part-time job, Tr. 56, 72–73; completed chores, Tr. 52, 75; used a microwave to heat food for himself, Tr. 83; and, although his mother often reminded him to do so, bathed himself, combed his hair, and brushed his teeth, Tr. 54–55, 80–81. Further, Dixon's teachers noted that Dixon had only slight problems in acquiring and using information and few problems in the domain of caring for himself. Tr. 35, 399. The primary evidence that March relied on, however,

9

was provided by Dixon's mother and was inconsistent with this evidence. *See, e.g.*, Tr. 545 (indicating that Dixon's mother provided March with much of the information for his report, including information indicating that Dixon had little to no concept of coping with natural dangers, needed constant supervision, and had no understanding of the concept of money); Tr. 548 (summarizing March's opinion and discussing Dixon's capacity to function and his mother's involvement in Dixon's life).

Regarding supportability, the ALJ explained that March premised much of his opinion on Dixon's mother's subjective reports, not objective medical evidence. Tr. 38. For example, instead of making independent medical findings regarding Dixon's ability to function independently, maintain basic safety, and manage basic hygiene and other daily living tasks, March relied "almost entirely" on Dixon's mother's statements and accepted them "at face value." *Id.* The ALJ, however, could not consider Dixon's mother a "disinterested" third-party witness and did not "rule out the possibility that [the mother's] extreme reports may [have been] magnifying [Dixon's] symptoms and history in an effort to support his application for continued disability." *Id.* In other words, March did not premise the majority of his opinion on his own objective findings regarding Dixon's alertness, oral communication, demeanor, and intelligence. *See* Tr. 35, 38. Thus, the ALJ's decision clearly demonstrates that he considered how "relevant the objective medical evidence and supporting explanations" that March presented were "to support his" medical opinion. 20 C.F.R. § 416.920c(c)(1). Further, and as explained above, substantial evidence supports the ALJ's conclusion that several of March's statements were premised "almost entirely" on Dixon's mother's statements rather than the objective medical evidence demonstrating that Dixon, despite his autism spectrum disorder, retained mental

10

flexibility, had minimal treatment history, and had only some, but not great, limitations on his daily activities.

For these reasons, the Court holds that the ALJ properly evaluated March's medical opinion and that substantial evidence supports the ALJ's conclusion that March's medical opinion is only minimally persuasive.

**B.     The Appeals Council's review**

Dixon claims that, when the Appeals Council denied review of his claim, it failed to properly consider new and material evidence.  Doc. 19 at 10–15.  The evidence he refers to is a Preferred Employment Services report that summarizes the objectives identified on a "[d]iscovery/[e]xploration [s]ervice [p]lan" and what Dixon learned about himself and about employment.  Tr. 9.

A federal regulation requires the Appeals Council to "review a case . . . if . . . [it] receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5).  "Whether evidence meets these criteria is a question of law this court reviews *de novo*." *See Bergmann v. Apfel*, 207 F.3d 1065, 1067, 1069 (8th Cir. 2000) (applying a de novo standard of review when considering a disability-benefits claim) (citing *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)).  Further, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual explains that if a claimant submits additional evidence that the Appeals Council does not consider because the evidence does not satisfy these criteria, the Appeals Council will "specifically describe the evidence in [its] denial notice or decision but will not designate the materials as exhibits." § I-4-2-20, https://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-

11

20.html#:~:text=In%20most%20circumstances%2C%20the%20administrative,the%20materials%20as%20exhibits;%20and (last visited March 17, 2025).

That occurred here. Dixon submitted additional evidence (the report), but the Appeals Council concluded that Dixon had "not show[n] a reasonable probability that" the additional evidence "would change the outcome of the decision." Tr. 2. And, as a result, it "did not exhibit this evidence." *Id.* The fact that the Appeals Council did not exhibit the report demonstrates that the Appeals Council did not consider the substance of the report when considering whether to review the ALJ's decision. Social Security Administration's Hearings, Appeals, and Litigation Manual at §1-4-2-20; *cf. Box v. Shalala*, 52 F.3d 168, 172 (8th Cir. 1995) (concluding that the Appeals Council's determination that the new evidence was unrelated to the claimant's condition evidences that the Appeals Council "did not consider the substance of the new evidence when it denied review of [the] claim").

The Court finds that the Appeals Council did not err when it declined to consider the report because Dixon had not shown a reasonable probability that the report would change the outcome of the ALJ's decision. As an initial matter, the report, in part, supports the ALJ's RFC determination and that Dixon can perform work in the economy. The report, for example, indicated that Dixon "arrived presentable, in a pair of jeans and a button up shirt," showing his ability to take care of himself; learned and applied information within a short period of time, e.g., he learned about fake flowers and completed his own arrangement of them; improved his skills throughout the different assessments; and could, at times, engage with coworkers. Tr. 9, 13.

Further, the report, like March's medical opinion, relied in part on Dixon's mother's statements. Tr. 9. For example, the report indicates that Dixon's mother "provide[d] needed information that" Dixon could not "provide due to difficulty communicating or expressing himself," and she "provided him guidance on how to respond" to questions. Tr. 9–10. The

12

record demonstrates, however, that Dixon's mother often provides conflicting and exaggerated statements about her son's symptoms. *Compare, e.g.*, Tr. 545 (telling March that Dixon needed constant supervision and that he didn't understand the concept of money), *with* Tr. 95 (explaining that Dixon went to the gas station and bought chips). In light of these inconsistencies, the fact that the report relies partly on Dixon's mother's statements renders the report less persuasive.

Thus, the report merely adds to the conflicting evidence in the record and does not support the conclusion that a reasonable probability exists that the report would change the outcome of the ALJ's decision. 20 C.F.R. § 416.1470(a)(5). The Court, therefore, concludes that Appeals Council did not err when it did not consider the substance of the report when it denied review of the ALJ's decision.

## VI.    Conclusion

For the reasons explained above, the Court affirms the Commissioner's decision and dismisses, with prejudice, Dixon's [1] Complaint. A separate judgment accompanies this Memorandum and Order.

So ordered this 17th day of March 2025.

*SL R. CQ*
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE